IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

2012 APR 13 PM 3:57

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. CR411-200 |
| | ) | |
| MARIO LEONARDO FERRER, | ) | |
| | ) | |
| Defendant. | ) | |

# O R D E R

Before the Court is Defendant Mario Leonardo Ferrer's Motion to Suppress Wiretap Evidence (Doc. 102) and the Magistrate Judge's Report and Recommendation (Doc. 230), to which objections were filed (Doc. 243). After a careful de novo review of the record in this case, the Court finds Defendant's objections without merit and concurs with the report and recommendation. Accordingly, the report and recommendation is **ADOPTED** as the Court's opinion in this case and Defendant's motion is **DENIED**.

The Magistrate Judge recommended that the motion be denied because the Government showed necessity when seeking the wiretap. (Doc. 230.) Defendant objects to the report and recommendation on the grounds that the Government did not have a sufficient showing of necessity when relying on an affidavit to obtain a wiretap. (Doc. 243 at 1.) Defendant's argument is that the Government did not exhaust

available conventional investigative techniques before resorting to the wiretap and that a "scant" forty-six days elapsed between learning of Orestes Ferrer's[1] existence and the issuance of the wiretap. (Doc. 102 at 1-2.)

18 U.S.C. § 2518(1)(c) requires the Government to establish necessity for a wiretap by any of three methods—"a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." The affidavit in support of a warrant "must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." United States v. Van Horn, 789 F.3d 1492, 1496 (11th Cir. 1986). This requirement does not "foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted; however it does require the Government to show why alternative measures are inadequate for this particular investigation." United States v. Perez, 661 F.3d 568, 581 (11th Cir. 2011) (internal quotations omitted); see also United States v. De La Cruz Suarez, 601 F.3d 1202, 1214 n.7 (11th Cir. 2011)

---

[1] The wiretap warrant was issued for Defendant's brother and co-Defendant Orestes Ferrer. For purposes of this order, Mario Ferrer will be referred to as "Defendant" and Orestes Ferrer will be referenced simply as "Ferrer."

2

(finding that the "necessity" requirement was met despite the Government's use of confidential informants and monitoring). In fact, "a comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap." De La Cruz Suarez, 601 F.3d 1202, 1214 (11th Cir. 2010) (quoting United States v. Alonso, 740 F.2d 862, 868 (11th Cir. 1984)); see also United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978).[2] To determine necessity, courts should evaluate wiretap affidavits "in a 'common sense fashion,' and 'the determination of when the Government has satisfied [the statutory] requirement must be made against flexible standards, and . . . each case must be examined on its own facts.'" United States v. Miller, 431 F. App'x 847, 853 (11th Cir. 2011) (quoting Hyde, 574 F.2d at 867).

Defendant objects to the report and recommendation on the grounds that the wiretap was merely "the initial step in the criminal investigation" and that the Government failed to prove the wiretap's necessity. (Doc. 243 at 6.) Defendant avers that the Government's affidavit neither was sufficiently related to the targeted individuals nor

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

3

adequately justified the departure from normal investigative procedures. (Id. at 11.) Also, Defendant's objections go to great length analogizing this case to that of United States v. Gonzalez, Inc., 412 F.3d 1120 (9th Cir. 2005), which affirmed a district court's suppression of a wiretap where necessity was not established. (Id.)

After a de novo review of the affidavit and record in this case, the Court concurs with the report and recommendation. Evaluating the Government's affidavit under Eleventh Circuit precedent, the Court finds that the affidavit clearly outlines the wiretap's necessity by detailing other investigative procedures that have already been tried (Doc. 243-1 ¶¶ 89, 93, 94), and why they are both unlikely to succeed (id. ¶¶ 83, 87, 88, 89, 90, 96) and dangerous (id. ¶¶ 83, 87, 92). Simply, the Government's affidavit reasonably outlines numerous alternative investigative measures have not and would not succeed, whether because of practical concerns (id. ¶ 89), confidential informant limitations (id. ¶ 83), confidential informant safety (id.), risk of exposing undercover infiltration (id. ¶¶ 87, 88), safety of undercover agents in potentially dangerous situations (id. ¶ 88), alerting conspirators of the investigation (id. ¶ 93), and technical limitations (id. ¶ 94). See Perez, 661 F.3d at 1214.

4

Because a comprehensive exhaustion of all investigative techniques is not necessary, see De La Cruz, 601 F.3d at 1204, the Court finds that the Government's affidavit sufficiently outlines a wide range of techniques attempted or considered.

Additionally, the Government has explained that the informants had little information available on the inner workings of the conspiracy because the informant "knows very little about [the cocaine trafficking activities]" and "would not be in a position to fully penetrate the organization or its sources of supply." (Doc. 243-1 ¶¶ 83, 84.) See Skills v. United States, 395 F. App'x 570, 572-73 (11th Cir. 2010). Members of the group were also "cautious and careful about possible law enforcement activity and hence an undercover agent will not penetrate very far into the organization" (id. ¶ 87) thereby frustrating any attempts to infiltrate the conspiracy. Skills, 395 F. App'x at 572-73. Any resort to either a search warrant or a grand jury investigation was premature and would significantly jeopardize the ongoing investigation. See Skills, 395 F. App'x at 572-73.

In a case with as broad an investigation set-up as the one at present, it is the Government who sets the scope of its investigation and the Government's agents can cast a

wide investigatory net, hoping to learn the full extent of a conspiracy. See United States v. Miller, 431 F. App'x 847, 853 (11th Cir. 2011) (finding affidavit sufficiently showed necessity where an "investigation sought to penetrate the drug activity and determine its entire scope, including source of supply, transportation routes, stash houses, and assets purchased, as well as the participants' identities"). At present, it was necessary to use a wiretap to uncover the full scope of the conspiracy because conventional techniques had neither succeeded nor were likely to succeed in aiding the investigative efforts.

Finally, Defendant relies on a Ninth Circuit Court of Appeals case to support his contention that the wiretap should be suppressed. In Gonzalez, the Ninth Circuit affirmed a district court order suppressing a wiretap of a public bus company being investigated for alien smuggling. Gonzalez, 412 F.3d at 1106. The Ninth Circuit held that the Government failed to establish the necessity of the wiretap by showing that normal investigative procedures had been both adequately utilized and exhausted. Id. at 1114. The investigators conducted five days of pen register analysis, five days of trap-and-trace analysis, a preliminary inquiry to place an undercover agent at one of the offices, and limited physical surveillance of the premises. Id. at 1108.

Additionally, the Ninth Circuit found that the Government failed to show that unutilized investigative procedures were unlikely to succeed. Id. at 1114. The Gonzalez affidavit stated that video or physical surveillance was not likely to produce useful information. However, the Ninth Circuit opined that surveillance could have identified individuals coming and going. Id. The Ninth Circuit also thought that the Gonzalez affidavit suggested that the "use of [confidential informants] or undercover agents . . . was a potentially productive, but unutilized tool." Id.

However, Gonzalez also aptly recognized that "the necessity requirement should not be interpreted to require law enforcement to exhaust every possible technique before resorting to wiretapping, but to ensure that in the usual case wiretapping is not used as the first meaningful step in an investigation." Gonzalez, 412 F.3d at 1113 (citations omitted).

Even though the Ninth Circuit upheld suppression of wiretap evidence in Gonzalez, which contains some similarities to the case before the Court, Gonzalez is not binding on this Court. Moreover, the Court finds Gonzalez inapposite to the present case. Unlike Gonzalez, the Government in this case used confidential informants and undercover agents as part of the initial investigation.

7

(Doc. 243-1 ¶¶ 83-86, 87-88.) While there were no confidential informants or undercover agents in Gonzalez, in this case the confidential informants and undercover agents were able to provide "valuable" initial information, but unable to either gather additional information or participate further in the drug trafficking activities. (Id.) The Government's affidavit also stated that the undercover agents were unable to infiltrate or participate further in the transactions being undertaken that would "in any meaningful way [ ] in itself achieve the goals of the investigation" (Id. ¶ 87). Additionally, unlike in Gonzalez, there were concerns about further or increased contact posing "unacceptable safety risk[s]" to a confidential informant (id. ¶ 83) as well as being "unlikely [to succeed] and potentially dangerous" to undercover agents (id. ¶ 88). Simply, the Government utilized two traditional investigative methods—confidential informants and undercover agents—to try and infiltrate the larger drug trafficking ring in which Ferrer was a direct part, but were unable to safely and plausibly further continue to gather additional information by these methods. Contra Gonzalez, 412 F.3d at 1114.

Also, unlike in Gonzalez where there was limited physical surveillance of the premises, here Government

agents "have conducted surveillance on the [sic] Ferrer on numerous occasions." (Doc. 243-1 ¶ 89.) The Government affidavit also provides that the use of a pole camera "would be of little or no value to the investigation" because it "will only be able to observe what takes place outside of the residence, and not inside." (Id.) Further, because Ferrer lives in a gated community, the Government has shown that such normal investigative techniques, if continued, are "likely to alert [the drug traffickers] that their activities are being monitored." (Id. ¶ 90.)

Similarly, the Court agrees with the Government's affidavit that any search or arrest warrants, grand jury, or witness interviews would be premature. (Id. ¶ 92.) While the Ninth Circuit in Gonzalez found that "the affidavit's terse rejection" regarding grand jury subpoenas or search warrants was improper because they "could have also aided the investigation," Gonzalez, 412 F.3d at 1114, the Government's affidavit in this case appropriately outlines the necessity of the wiretap by explaining the drawbacks of such measures. (Doc. 243-1 ¶ 92.) These measures are premature because "the investigation has not yet identified all of the locations where the [subjects] and their accomplices will keep their controlled substances, money or other evidence of their criminal activity," (Doc. 243-1

9

¶ 92), and "execution of search warrants at this time might result in flight by the [subjects and] destruction of evidence" (id.). Applying the necessity principles in a common sense fashion, see Miller, 431 F. App'x at 853, any use of search or arrest warrants, grand jury, or witness interviews are likely to frustrate the overall purposes of the investigation and are unlikely to advance the investigation any meaningful degree.

Lastly, unlike Gonzalez, the Government's affidavit suggested that a prior trash pull was unsuccessful and further pulls would prove futile. "Based on information provided by previous interceptions . . . it is unlikely a refuse inspection of the [subjects'] trash would reveal any information about the members of the organization, or their respective roles." (Doc. 243-1 ¶ 96.) The Court is not persuaded by Defendant's argument that the Government could have been more diligent in conducting the trash pulls of a house in a gated community without alerting the security guard, neighbors, or the drug traffickers themselves.

For the foregoing reasons and those outlined in the report and recommendation, Defendant's motion to suppress (Doc. 102) must be denied. The Court finds that the Government showed necessity in seeking a wiretap because it made several attempts at various traditional investigative

10

methods before ultimately seeking the wiretap warrant. The wiretap was hardly used—as Defendant incorrectly contends—"as [the Government's] initial investigative technique." (Doc. 243 at 8-10.) Accordingly, the report and recommendation is **ADOPTED** as the Court's opinion in this case and Defendant's motion is **DENIED**.[3]

SO ORDERED this 13th day of April 2012.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] Defendant has also requested—and was properly denied—a Franks hearing. (Doc. 102 at 15.) Under Franks v. Delaware, 438 U.S. 154 (1954), a defendant is entitled to peer behind an affidavit in support of a wiretap order where he makes a substantial preliminary showing that the affiant knowingly and intentionally, or with a reckless disregard for the truth, included misleading information that was material to the finding of necessity. United States v. Wilson, 341 F. App'x 239, 243-44 (11th Cir. 2009); United States v. Novaton, 271 F.3d 968, 986 (11th Cir. 2001). After careful consideration, the Court agrees with the report and recommendation that "any ambiguities [read into the affidavit] were simply not material to the necessity finding" and that Defendant has not "come forward with extra-affidavit evidence suggesting that [the Government's affidavit] made material misrepresentations." (Doc. 230 at 13.)